*MHN*

**FILED**

UNITED STATES DISTRICT COURT    MAR 2 8 2008    **NH**
NORTHERN DISTRICT OF ILLINOIS   3-28-2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff,<br><br>              ·  VS.<br>Rondell Freeman<br>                    Defendant. | )<br>)<br>)<br>)  NO. 07 CR 843<br>)<br>) |

### MOTION FOR DEFENDANT'S PRE-TRIAL RELEASE

Now comes the defendant, Rondell Freeman, by and through his
attorneys, Herb Goldberg and Associates, and moves this Honorable
Court, pursuant to previous bond hearing held herein to accept the
sureties herein and order the pre trial release pursuant to prior
court holdings.  In support thereof the defendant states as
follows;

1.  That the defendant herein was charged by way of complaint
with Conspiracy to commit various drug and related offenses.

2.  That subsequent to his arrest and initial appearance
before this Honorable Court the government moved for the detention
of the defendant, pending trial without bond.

3.  That after extensive argument by all parties, this
Honorable Court concluded that the defendant should be released
upon bond if $ 700,000.00 in equity in real property or other
assets could be obtained to secure said release, amongst other
conditions that this Honorable Court deemed appropriate.

4.  This court after carefully considering the evidence and
arguments presented, and applying them in accordance with the

/

provisions of  The "The Comprehensive Crime Control Act of 1984"
and the Bail Reform Act of 1984 18 U.S.C. secs. 3141-3156. The
court indicated it would release the defendant on bond conditions
and acceptable surety to this Honorable Court.

    5.   This Honorable Court thoroughly examined and acted in
accordance with the purpose of this Act (S. Rep. at 3185). Here
many options are available to the government to assure the
defendant's appearance through all court proceedings.

    6.   The defendant has been able to secure property and other
assets, as well as a surety and third party custodian to assure
his appearance in court at future court proceedings.  The
defendant has available to him the following:

    a).  **Real Property:**

**Parcel A Condo 1S: 4800 S. Saint Lawrence Ave., Chicago, Illinois
60615
Owner:  Ms. Taekala Irving
Appraised Value:  $ 400,000.00 see (Exhibit 1)
Mortgages: $370,00.00 (Payoff Exhibit 2)
Equity: $ 30,000.00 approx.**

    b).  <u>Annuity assignment</u>:     $ 680,000.00/$ 2,000,000.00 value
and execution of assignment of same to United States of America
note with **immediate payout** upon finding of breach of conditions of
bond.    Surety on bond of same amount subject to judgment and
contempt of court if not immediately "cashed out." (Exhibit 8)
Confirmation of Annuity Exhibits 3-6, Value Table Exhibit #7)
    c).  Third Party Custodian:  Ms. Taekala Irving living with
her at the above address.

  The defendant will also comply with all terms of pretrial
release including, but not limited to home confinement, daily

report to pre trial services and all other limitations imposed by this Honorable Court.    There are conditions of, or combination of conditions that will satisfy the purpose of the statute. Sec. 3142(c) regarding the defendant's pre-trial release.

6.    The government has not proven that no other conditions exist that would assure the defendant's return to stand trial. The defendant is aware that if he fails to return to court after his release on bond additional penalties could be imposed in this cause and additional charges could be levied against him.

**Wherefore,** the defendant requests that this court enter an order allowing the defendant's release conditioned upon whatever conditions this Honorable Court deems necessary and proper and approve for "posting," the surety properties and individuals herein.

Respectfully Submitted by:

Herb Goldberg and Associates
Attorneys for Rondell Freeman
224 Linden Park Place
Highland Park, Ill. 60035
(312) 320-8126

EXHIBIT
File No. 02200802PamCml Page #1
#1



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
4800 South Saint Lawrence Ave
See Addenda
Chicago, IL 60615

### FOR:
Taekala Irving
4800 South Saint Lawrence Ave
Chicago, IL 60615

### AS OF:
2/21/2008

### BY:
Choudhry Muzaffar
Certified Residential Real Estate Appraiser

Chaudhry Muzaffar

Chicago, Illinois

Teakala Irving
4800 South Saint Lawrence Ave
Chicago, IL 60615

Re:  Property:      4800 South Saint Lawrence Ave
                    Chicago, IL 60615
     Borrower:      Client:Teakala Irving
     File No.:       02200802PamCm

In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Sincerely,

Chaudhry Muzaffar
Certified Residential Real Estate Appraiser

2

Borrower  Client:Taekala Irving
Property Address  4800 South Saint Lawrence Ave
City  Chicago                County  Cook                State  IL        Zip Code  60615
Lender  Taekala Irving
File No. 02200802PamCm

## APPRAISAL AND REPORT IDENTIFICATION

**This appraisal conforms to one of the following definitions:**

☒ Complete Appraisal    (The act or process of estimating value, or an opinion of value, performed without invoking the Departure Rule.)

☐ Limited Appraisal    (The act or process of estimating value, or an opinion of value, performed under and resulting from invoking the Departure Rule.)

**This report is one of the following types:**

☐ Self Contained    (A written report prepared under Standards Rule 2-2(a) of a Complete or Limited Appraisal performed under STANDARD 1.)

☒ Summary    (A written report prepared under Standards Rule 2-2(b) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ Restricted    (A written report prepared under Standards Rule 2-2(c) of a Complete or Limited Appraisal performed under STANDARD 1, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

The statements of fact contained in this report are true and correct.
The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.
I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.
I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
My engagement in this assignment was not contingent upon developing or reporting predetermined results.
My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
I have (or have not) made a personal inspection of the property that is the subject of this report.
No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

## Comments on Appraisal and Report Identification
Note any departures from Standards Rules 1-3 and 1-4, plus any USPAP-related issues requiring disclosure:

**APPRAISER:**

Signature: _____
Name: Choudhry Muzaffar
Date Signed: February 22, 2008
State Certification #: 556.004663
or State License #: _____
State: IL
Expiration Date of Certification or License: 9/30/2009

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____

☒ Did  ☐ Did Not  Inspect Property

## SUMMARY OF SALIENT FEATURES

| SUBJECT | | |
|---|---|---|
| Subject Address | 4800 South Saint Lawrence Ave | |
| Legal Description | See Addenda | |
| City | Chicago | |
| County | Cook | |
| State | IL | |
| Zip Code | 60615 | |
| Census Tract | 3812.00 | |
| Map Reference | 16974 | |

| SALE PRICE | | |
|---|---|---|
| Sale Price | $ N/A | |
| Date of Sale | Insp 2/21/08 | |

| CLIENT | | |
|---|---|---|
| Borrower / Client | Client:Teakala Irving | |
| Lender | Taekala Irving | |

| PROPERTY FEATURES | | |
|---|---|---|
| Size (Square Feet) | 1,972 | |
| Price per Square Foot | $ | |
| Location | Residential | |
| Age | 2 | |
| Condition | Good/New | |
| Total Rooms | 8 | |
| Bedrooms | 4 | |
| Baths | 3 | |

| APPRAISER | | |
|---|---|---|
| Appraiser | Choudhry Muzaffar | |
| Date of Appraised Value | 2/21/2008 | |

| VALUE | | |
|---|---|---|
| Final Estimate of Value | $ 400,000 | |

02200802PamCm

## Individual Condominium Unit Appraisal Report

File # 02200802PamCm

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address  4800 South Saint Lawrence Ave | Unit #  1S | City Chicago | State  IL | Zip Code  60615 |

Borrower  Client/Teakala Irving    Owner of Public Record  Teakala Irving    County  Cook

Legal Description    See Addenda

Assessor's Parcel #  20-10-210-042-1002    Tax Year  New    R.E. Taxes $  New

Project Name  Bronzeville/Grand Boulevard    Phase #    Map Reference  16974    Census Tract 3812.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $  0.00    HOA $ 178.00 ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  Estimate of Market Value

Lender/Client   Teakala Irving    Address

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).

CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   This is not a sale.

Contract Price $ N/A    Date of Contract  Insp2/21/08    Is the property seller the owner of public record? ☐ Yes ☒ No   Data Source(s)  Cook Cty Assessor

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ YES ☒ NO

If Yes, report the total dollar amount and describe the items to be paid.   N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | Condominium Unit Housing Trends | Condominium Housing | | Present Land Use % |
|---|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE $ (000) | AGE (yrs) | One-Unit  55 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | 765k Low  High | New  100+ | 2-4 Unit  20 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 95k | New | Multi-Family  15 % |
| Neighborhood Boundaries    Grand Boulevard is part of the larger Historic Bronzeville community. Borders: | | 765k  High | 100+ | Commercial  5 % |
| Pershing Road, south by 51st Street, east by Cottage Grove, and west by Rock Island Rail Road. | | 395k  Pred. | 90+/- | Other  5 % |

Neighborhood Description    The Grand Boulevard neighborhood is located on the near south side of Chicago. All common municipal services and amenities are readily available and easily accessible. This includes police, fire, hospitals, schools, community organizations, shopping, places of worship, parks and recreational facilities. Employment is stable and accessible. This community is constantly growing, especially in the recent years as evidenced by a

Market Conditions (including support for the above conclusions)    Moderate market conditions exist in this area. Most forms of financing are available in this area with typical market times averaging 120 days. Financing of sales in the general area are nearly evenly divided between conventional and FHA/VA terms. Supply and demand appear to be in equilibrium. There are no known special financing concession prevalent in this market at this time.

Topography LEVEL AT GRADE    Size  Average    Density Typical for the market    View  Residential

Specific Zoning Classification RM-5    Zoning Description  Residential Multi-Unit Districts

Zoning Compliance ☒ Legal ☐ Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? ☒ Yes ☐ No

☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | Municipal service | Water | ☒ | Municipal service | Street  Asphalt | | |
| Gas | ☒ | Municipal service | Sanitary Sewer | ☒ | Municipal service | Alley  Concrete/Brick | ☒ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone  X    FEMA Map # 17031C0540F    FEMA Map Date  11/6/2000

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No   If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No   If Yes, describe

No apparent  adverse easements, encroachments, or other adverse conditions. The subject is typical for the immediate area.

Data source(s) for project information    The owner, and County Records

Project Description ☐ Detached ☐ Row or Townhouse ☐ Garden ☐ Mid-Rise ☐ High-Rise ☒ Other (describe)  3 story building/ Duplexed condo

| General Description | | Subject Phase | | Subject Project | | Project Completed Information | |
|---|---|---|---|---|---|---|---|
| # of Stories  3 | Exterior Walls  Brick/Con | # of Units  6 | # of Phases  1 Unkn | # of Planned Phases  N/A |
| # of Elevators  0 | Roof Surface  Asphalt Ri | # of Units Completed  6 | # of Units  6 | # of Planned Units  N/A |
| ☒ Existing ☐ Proposed | Total # of Parking  2 | # of Units For Sale  1 | # of Units for Sale  1 | # of Units for Sale  N/A |
| ☐ Under Construction | Ratio (spaces/units) 2:1 | # of Units Sold  5 | # of Units Sold  5 | # of Units Sold  N/A |
| Year Built  2006 | Type  Garage | # of Units Rented  0 | # of Units Rented  0 | # of Units Rented  N/A |
| Effective Age  1+/- | Guest Parking  Street | # of Owner Occupied Units  5 | # of Owner Occupied Units  5 | # of Owner Occupied Units  N/A |

Project Primary Occupancy ☒ Principle Residence ☐ Second Home or Recreational ☐ Tenant

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No

Management Group - ☒ Homeowners' Association ☐ Developer ☐ Management Agent - Provide name of management company.    Saint Lawrence Commons

Condominium Association.

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? ☐ Yes ☒ No   If Yes, Describe

Was the project created by the conversion of existing building(s) into a condominium? ☐ Yes ☒ No  If Yes, describe the original use and date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? ☒ Yes ☐ No  If No, describe

Is there any commercial space in the project? ☐ Yes ☒ No  If Yes, describe and indicate the overall percentage of the commercial space.



02200802PamCm

## Individual Condominium Unit Appraisal Report

File # 02200802PamCm

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction.   Overall the subject is in excellent condition featuring all modern and vintage finishes. The subject is new construction, built in 2006. The subject unit is duplexed to the lower level.

Describe the common elements and recreational facilities.   Common elements include: Halls, grounds maintenance, insurance, water, trash, janitorial service.

Are any common elements leased to or by the Homeowners' Association? ☐ Yes ☒ No If Yes, describe the rental terms and options.

Is the project subject to a ground rent? ☐ Yes ☒ No If Yes, $ _____ per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type? ☒ Yes ☐ No If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I ☐ did ☒ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.   Neither the condominium documents nor budget documents were supplied to the appraiser. The appraiser assumed there was no information contained in the documents that would effect the marketability of the subject.

Are there any other fees (other than regular HOA charges) for the use of the project facilities? ☐ Yes ☒ No If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears ☐ High ☒ Average ☐ Low If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser? ☐ Yes ☒ No If Yes, describe and explain the effect on value and marketability.

Unit Charge $ 178.00 per month X 12 = $ 2,136 per year   Annual assessment charge per year per square feet of gross living area = $ 1.08
Utilities included in the unit monthly assessment ☐ None ☐ Heat ☐ Air Conditioning ☐ Electricity ☐ Gas ☐ Water ☐ Sewer ☐ Cable ☐ Other (describe)

**UNIT DESCRIPTION**

| General Description | Interior | Heating/Cooling | Amenities | Appliances | Car Storage |
|---|---|---|---|---|---|
| Floor # 1 | Floors Hrdwd/Mrbl/Crpt/New | ☒ Fireplace(s) # 2 | ☒ Refrigerator | ☐ None | |
| # of Levels 2 | Walls Drywall/New | ☐ WoodStove(s) # | ☒ Range/Oven | ☒ Garage ☒ Covered ☐ Open | |
| Heating Type GFA Fuel Gas | Trim/Finish Wood/New | ☒ Deck/Patio Rear | ☒ Disp ☒ Microwave | # of Cars 2 spaces in 6car gar | |
| ☒ Central AC ☒ Individual AC | Bath Wainscot Marble/New | ☒ Porch/Balcony Rear | ☒ Dishwasher New | ☐ Assigned ☒ Owned | |
| ☐ Other (describe) | Doors Wood/New | ☐ Other | ☒ Washer/Dryer In Unit | Parking Space # 15 | |
| Finished area above unit contains: | 8 Rooms | 4 Bedrooms | 3 Bath(s) | 1,972 Square Feet of Gross Living Area Above Grade | |

Are the heating and cooling for the individual units separately metered? ☒ Yes ☐ No If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)   The subject has a new gas forced air heating system, a new 40 gallon water heater and new 100 amphere electrical service on circuit breakers. There are also two fireplaces.
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   The subject is is considered to be in very good condition. Physical depreciation is minimal. No evidence of functional or external obsolescence was noted. All systems appear to be in working order.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

**PRIOR SALE HISTORY**

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   MLS, owner and Cook County Records
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   MLS and Cook County Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 2006 Orig Purchase $390,000 | No sales within last 12 mos | 12/07, $284k | 1/2007 Quit Claim |
| Price of Prior Sale/Transfer | No others within past 3 yrs | No other information | 9/07 $152,500 | No other information |
| Data Source(s) | Cook Recorder of Deeds | MLS/Cty Records | MLS/Cty Records | MLS/Cty Records |
| Effective Date of Data Source(s) | 2/21/08 | 2/21/08 | 2/21/08 | 2/21/08 |

Analysis of prior sale or transfer history of the subject property and comparable sales.   The prior sales listed do not have any effect on the estimate of value in this report.

Freddie Mac Form 465 March 2005

Fannie Mae Form 1073 March 2005

Form 1073 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

02200802PamCm

## Individual Condominium Unit Appraisal Report

File # 02200802PamCm

| | | | |
|---|---|---|---|
| There are 64 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 129,900 to $ 950,000 |
| There are 123 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 95,000 to $ 765,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 4800 South Saint Lawrence Ave, # Chicago, IL 60615 | 4956 S. Champlain Unit 1S Chicago, IL | | 4725 S. Saint Lawrence Unit A Chicago, IL | | 4454 S. Vincennes Unit 1N Chicago, IL | |
| Project Name and Phase | Bronzeville/Grand Boulevard | Bronzeville/Grand Boulevard | | Bronzeville/Grand Boulevard | | Bronzeville/Grand Boulevard | |
| Proximity to Subject | | 1.5 blocks southeast | | 1 block north | | 3.5 blocks north | |
| Sale Price | $ N/A | $ 425,000 | | $ 370,000 | | $ 355,000 | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 137.10 sq. ft. | | $ 142.31 sq. ft. | | $ 147.92 sq. ft. | |
| Data Source(s) | | MLSN#06375815  1 dom | | MLSN#06679867  73 dom | | MLSN#06727115  28 dom | |
| Verification Source(s) | | Cook County Rcds. | | Cook County Rcds. | | Cook County Rcds. | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conv/None | | Conv/None | | Conv/None | |
| Date of Sale/Time | | 6/19/07 | | 12/31/07 | | 01/25/08 | |
| Location | Residential | Residential/Typ | | Residential/Typ. | | Residential/Typ. | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | 178.00 | 175.00 | | 185.00 | | 145.00 | |
| Common Elements and Rec. Facilities | Halls, grounds insurance, trash | Halls, grounds insurance, trash | | Halls, grounds insurance, trash | | Halls, grounds insurance, trash | |
| Floor Location | 1 | 1 | | 1 | | 1 | |
| View | Residential | Similar Property | | Similar Property | | Similar Property | |
| Design (Style) | Duplex Condo | Duplex Condo | | Duplex Condo | | Duplex Condo | |
| Quality of Construction | Brk/Stone/New | Brk/Stone/New | | Brk/Stone/New | | Brk/Stone/New | |
| Actual Age | 2 | 2 | | 1 | | 2 | |
| Condition | Good/New | Good/New | | Good/New | | Good/New | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 8 | 4 | 3 | 8 | 5 | 4 | | 8 | 5 | 3 | | 8 | 4 | 3 | |
| Gross Living Area | 1,972 sq. ft. | 3,100 sq. ft. | -9,280 | 2,600 sq. ft. | +10,720 | 2,400 sq. ft. | +18,720 |
| Basement & Finished Rooms Below Grade | 986 Rec/Bed/Bath/Ld | Finished duplex Rec rm/bath/Bed | | Finished duplex Rec/Ldy/3 Bed | | Finished dplx up Bed/Fam rm/Bath | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | GFA/CAC | GFA/CAC | | GFA/CAC | | GFA/CAC | |
| Energy Efficient Items | Adequate | Adequate | | Adequate | | Adequate | |
| Garage/Carport | 2 spaces in 6car gr | Garage 1- space | +2,000 | Garage 1- space | +2,000 | 1 space assigned | -16,000 |
| Porch/Patio/Deck | Rear patio | Rear patio | | Rear patio | | Rear patio | |
| Fireplace | 2 fp | 1 fp | +1,000 | 1 fp | +1,000 | 2 fp | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 6,280 | ☒ + ☐ - | $ 13,720 | ☒ + ☐ - | $ 24,720 |
| Adjusted Sale Price of Comparables | | Net Adj. 1.5 % Gross Adj. 2.9 % | $ 418,720 | Net Adj. 3.7 % Gross Adj. 3.7 % | $ 383,720 | Net Adj. 7.0 % Gross Adj. 7.0 % | $ 379,720 |

Summary of Sales Comparison Approach  All of the above comparable sales are within a one mile proximity of the subject and sold within one year of the date of valuation. All are very similar to the subject with respect to vital characteristics except for the characteristics reflected by the adjustments shown above. After applying the adjustments, equal weight was given to all three sales...say $400,000.

Indicated Value by Sales Comparison Approach  $ 400,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ N/A  X Gross Rent Multiplier  = $  Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)  Not developed...See the reconciliation

Indicated Value by: Sales Comparison Approach  $ 400,000  Income Approach (if developed) $

See Addenda;

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  The Appraisal is an estimation of the " AS IS " Market Value of the subject property.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 400,000 , as of 2/21/2008 , which is the date of inspection and the effective date of this appraisal.

02200802PamCm
## Individual Condominium Unit Appraisal Report
File # 02200802PamCm

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Individual Condominium Unit Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER    Choudhry Muzaffar | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   Choudhry Muzaffar | Name |
| Company Name   PAM Services | Company Name |
| Company Address   Chicago, Illinois | Company Address |
| Telephone Number   773-930-3243 | Telephone Number |
| Email Address   cmuzaffa@nkappraisal.net | Email Address |
| Date of Signature and Report   February 22, 2008 | Date of Signature |
| Effective Date of Appraisal   2/21/2008 | State Certification # |
| State Certification #   556.004663 | or State License # |
| or State License # | State |
| or Other                              State # | Expiration Date of Certification or License |
| State   IL | |
| Expiration Date of Certification or License   9/30/2009 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did inspect exterior of subject property from street |
| 4800 South Saint Lawrence Ave, # 1S | Date of Inspection |
| Chicago, IL 60615 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   400,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name   Taekela Irving | **COMPARABLE SALES** |
| Company Name   Taekela Irving | ☐ Did not inspect exterior of comparable sales from street |
| Company Address | ☐ Did inspect exterior of comparable sales from street |
| | Date of Inspection |
| Email Address | |

**Supplemental Addendum**

File No. 02200802PamCml Page #12

File No.   02200802PamCm

| Borrower/Client   Client:Taekala Irving | | | |
|---|---|---|---|
| Property Address  4800 South Saint Lawrence Ave | | | |
| City  Chicago | County  Cook | State  IL | Zip Code  60615 |
| Lender   Taekala Irving | | | |

## PURPOSE OF THE APPRAISAL

The purpose of the appraisal is to estimate the Market Value of the Fee Simple Interest in the subject property as of 2/21/2008

## EXPOSURE TIME

Exposure time is the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal. A reasonable exposure time for the subject property is concluded to have been about 2 to 4 months, based on market conditions at that time.

## FUNCTION OF THE APPRAISAL

The function of this appraisal is to provide an estimate of Market Value of the Subject free and clear of all encumbrances as of 2/21/2008.

## PROPERTY RIGHTS APPRAISED

The property rights appraised are the rights in fee simple estate, excluding personalty, free and clear of all encumbrances or indebtedness. Fee simple estate is defined as: "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations of the four powers of government."

## INTENDED USER(S) OF THIS REPORT

Taekala Irving and her legal representative(s).

## DATE OF VALUATION

The date of valuation reflected in this appraisal report is 2/21/2008.

## DATE OF INSPECTION:

The date of inspection of the subject property was 2/21/2008

## LEGAL DESCRIPTION:

The legal description was not provided by the property owner. We understand the subject property to be identified by the permanent tax index number of:

### 20-10-210-042-1002

We recommend that an appropriate description be verified by counsel before being used in any document or conveyance.

**Supplemental Addendum**

File No. 02200802PamCm Page #13

File No.    02200802PamCm

| Borrower/Client   Client:Teakala Irving | | | |
|---|---|---|---|
| Property Address   4800 South Saint Lawrence Ave. | | | |
| City   Chicago | County   Cook | State   IL | Zip Code   60615 |
| Lender   Taekala Irving | | | |

<u>ZONING INFORMATION:</u>

### 17-2-0104 RM, Residential Multi-Unit Districts

**17-2-0104-A General**

The primary purpose of the RM districts is to accommodate *detached houses*, *two-flats*, *townhouses* and *multi-unit residential buildings*. Although the districts accommodate a wide range of housing types, they are primarily intended to accommodate moderate- to high-density, *multi-unit residential buildings* in areas where such development already exists or where it is desired in the future. The Zoning Ordinance includes 5 RM districts--RM4.5, RM5, RM5.5, RM6 and RM6.5. These districts are differentiated primarily on the basis of allowed *density* (minimum *lot area* per unit), *floor area ratio* and allowed *building heights*.

**17-2-0104-B RM4.5**

The RM4.5 district is intended to serve as a transition district between the RT4 and RM5 classifications. It is primarily intended to accommodate multi-unit *buildings*. (Amend. Coun. J. 11-03-04, p. 35382, 3-9-05, p. 44398.)

**17-2-0104-C RM5 and RM5.5**

The RM5 and RM5.5 districts are intended to accommodate *multi-unit residential buildings*. The RM5 district differs from the RM5.5 district only in terms of the maximum *building height* allowed. Applicable height limits in RM5 generally limit *buildings* to a maximum of 3 and 1/2 to 4 stories, whereas larger *lots* in the RM5.5 district could contain 5-*story* structures. RM5.5 zoning is intended to be applied only in areas where the established neighborhood character is defined by *buildings* taller than 4 stories or in areas where there is no established neighborhood character, due to a lack of *buildings*.

<u>**MARKET AREA INFORMATION**</u>

After years of aggressive demolition, Grand Boulevard is rebuilding. New houses and apartments are rising along Champlain Avenue on the eastern edge of the community, where the Willard School stood vacant for more than a decade, and houses are rising on the scattered vacant lots. Developers increasingly identify the neighborhood as North Washington Park.

Grand Boulevard's reconstruction is at the heart of the movement to restore Bronzeville, the historic community built by African Americans in the segregated Chicago of the 1920s to 1950s. While Bronzeville's physical boundaries are ambiguous, Grand Boulevard easily constitutes more than half of it. Grand Boulevard is bounded by Pershing Road, 51st Street, Cottage Grove Avenue and the Rock Island railroad tracks.

The well-preserved graystone, sandstone and red brick buildings along King Drive suggest the former architectural grandeur of this community. Grand Boulevard was the name of Bronzeville's main thoroughfare in the 1920s and '30s. The street became South Park Boulevard and eventually Martin Luther King Drive.

On the site of the razed Willard School, 100 new apartment units are completed and a gated development of houses is also completed.

Grand Boulevard will remain a fast growing, yet stable community for years to come.

<u>**Previous Sales of Condominiums in the Subject Building:**</u>

| 1N | - | July 2006 | $388,000 Duplex |
|---|---|---|---|
| 2N | - | Sept 2007 | $305,000 Simplex |
| 3N | - | June 2006 | $427,000 |
| 3S | - | Feb 2007 | $405,000 |

**Supplemental Addendum**      File No.    02200802PamCm

| Borrower/Client   Client:Teakala Irving | | | |
|---|---|---|---|
| Property Address  4800 South Saint Lawrence Ave | | | |
| City  Chicago | County  Cook | State  IL | Zip Code  60615 |
| Lender    Teakala Irving | | | |

## FINAL RECONCILIATION

The Cost Approach reflects the value of the subject property based on an analysis of the current replacement cost of the subject improvements, less the estimated physical depreciation, functional obsolescence, and external obsolescence, plus the estimated market value of the site, as indicated by a market analysis of comparable vacant properties. This approach to value provides an excellent method of estimating the value of recently constructed properties such as the subject; however, there are inherent difficulties in estimating accrued depreciation and remaining economic life and also functional and economic obsolescence.

The Income Approach was not developed due to properties of this type are not typically purchased for investment purposes. There was not enough sufficient rental data to develop a good, competent analysis via the Income Approach. Therefore, this approach to value was not developed.

The Sales Comparison Approach reflects the value of the subject property based upon an analysis of recent sales of similarly improved properties within the subject area. The Sales Comparison Approach is considered to be the most important approach to value because it reflects the actions of buyers and sellers of comparable properties, including both owner/users and investors, and exemplifies the basic "Principle of Substitution" which states that no prudent buyer will pay more for a property than the cost of acquiring comparable property. An investigation of the market for improved sales of single family properties similar to the subject revealed some market sales in the subject's immediate market area. In the final analysis, substantial emphasis was also placed on the Sales Comparison Approach.

Therefore based on the analysis of the aforementioned approaches to value and data contained in this appraisal report, it is the appraiser's opinion that the Market Value, in fee simple title ownership, free and clear of all encumbrances as of 2/21/2008 was:  **$400,000.**

## Subject Photo Page

| | |
|---|---|
| Borrower/Client   Client:Taekala Irving | |
| Property Address  4800 South Saint Lawrence Ave | |
| City   Chicago            County  Cook | State  IL            Zip Code  60615 |
| Lender    Taekala Irving | |



**Subject Front**

4800 South Saint Lawrence Ave, # 1S

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,972 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Residential |
| View | Residential |
| Site | Typical |
| Quality | Brk/Stone/New |
| Age | 2 |



**Subject Rear**



**Subject Street**

File No. 0220060(2PamCm) Page #18

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower/Client | Client:Teakala Irving |
| Property Address | 4800 South Saint Lawrence Ave |
| City    Chicago | County  Cook    State  IL    Zip Code  60615 |
| Lender    Taekala Irving | |









**MORTGAGE LOAN STATEMENT**

Saxon Mortgage Services, Inc.
P.O. Box 161489
Ft. Worth TX 76161-1489

PROPERTY ADDRESS:
4800 S SAINT LAWRENCE AVE #1S
CHICAGO IL 60615

**CUSTOMER CALL CENTER    1-800-594-8422**

| | |
|---|---|
| Statement Date: | 01/10/08 |
| Loan Number: | 2000424883 |

Current Balances:
Principal: $370,242.26
Escrow: $0.00

B8716-010904-003
TEAKALA IRVING
4800 S SAINT LAWRENCE AVE
CHICAGO IL 60615-1561

| | |
|---|---|
| Interest Rate: | 9.875% |
| YTD Interest Paid: | $3,046.99 |

Current Payment Due:
| | |
|---|---|
| Mortgage Amount: | $3,071.39 |
| Escrow Amount: | $0.00 |
| Optional Insurance | $0.00 |
| Delinquent Payment | $0.00 |
| Other: | $0.00 |
| Unpaid Late Charge | $0.00 |
| Suspense: | $0.00 |
| TOTAL AMOUNT DUE: | $3,071.39 |
| Loan Due Date: | 02/01/08 |

**Visit us online at: www.saxononline.com**

*Saxon Mortgage Services, Inc.'s goal is to provide attentive service to its customers. Saxon is dedicated to delivering accurate information in a timely manner, empowering its employees to make decisions, and providing First Call resolution. Through honesty, dependability, and attention to detail, Saxon will demonstrate its ability to exceed the service needs of its customers.*

**ACTIVITY SINCE YOUR LAST STATEMENT**
Payments received after the statement date do not appear.

| TRANSACTION DESCRIPTION | TRANSACTION DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL INSURANCE | MISC. FEES | SUSPENSE |
|---|---|---|---|---|---|---|---|---|
| REGULAR PAYMENT | 01/10/08 | 3,071.39 | 24.40 | 3,046.99 | 0.00 | 0.00 | 0.00 | 0.00 |

**LATE CHARGE INFORMATION:** Avoid late charges by making payments for the exact amount on or before the due date. Late Charges will not be waived because of postal delays; therefore, please allow adequate time for mail service. Any late charge must be included on the next payment. We may report information about your account to the credit bureaus. Late payments, missed payments or other defaults on your account may be reflected on your credit report.

**IMPORTANT MESSAGES**

Our services are only an e-mail away! Visit our improved website www.Saxononline.com for general inquiries and customer service related issues. We look forward to hearing from you.

**Saxon now offers the "Check by Phone" service via the Internet at www.saxononline.com. Your PIN number is the last four digits of the primary borrower's Social Security number.**

*If you are a borrower on this loan and have filed for bankruptcy protection, this statement is for informational purposes only and is not attempting any act to collect, recover or offset any discharged debt as your personal liability.*

PLEASE DETACH AT PERFORATION AND RETURN THIS COUPON WITH PAYMENT

Saxon Mortgage Services, Inc.

TEAKALA IRVING

☐ Please check here if address or phone number change has been made on reverse side.

| LOAN NUMBER | CURRENT PAYMENT | DELINQUENT PAYMENT | OTHER FEES | UNPAID LATE CHARGES | SUSPENSE CREDIT | TOTAL AMOUNT DUE | DUE ON OR BEFORE |
|---|---|---|---|---|---|---|---|
| 2000424883 | $3,071.39 | $0.00 | $0.00 | $0.00 | $0.00 | $3,071.39 | 02/01/08 |

| LATE FEE | RECEIVED AFTER | TOTAL PAYMENT |
|---|---|---|
| $153.56 | 02/16/08 | $3,224.95 |

SAXON MORTGAGE SERVICES INC.
PO BOX 981105
FT WORTH TX 76181-0105

| | |
|---|---|
| ADDITIONAL PRINCIPAL | $ |
| ADDITIONAL ESCROW | $ |
| TOTAL ENCLOSED | $ |

Funds in excess of the Total Amount Due will only be applied to Principal if there are no unpaid fees.



New York Life Insurance Company
New York Life Insurance and
Annuity Corporation
(A Delaware Corporation)
51 Madison Avenue, New York, NY 10010

Rm 809

June 01, 2007

Teakala Irving
4800 S. St. Lawrence
Chicago, IL 60615

RE:     FP 201 124

Dear Ms. Irving:

This is to confirm that the above annuitant has a Structured Settlement contract with New York Life Insurance Company.

The terms of the contract are Life income for 29 years guaranteed. The payments began on August 26, 2006 and will end on June 26, 2035. Ms. Irving is presently receiving a monthly payment of $10500.00 compounding at 5% per annum. If the payee survives the 30 years guarantee period, the installments will continue for life thereafter.

Lincoln National Structured Settlements is the owner of the above contract.

If you have any questions, please feel free to write or contact me at 212-576-5686.

Sincerely,

Evelyn Ortiz
Senior Service Associate
Individual Annuity Department
Room 809

Feb 15 08 05:30p   Teakala Irving                    7735488982                    p.4

## APPLICATION FOR STRUCTURED SETTLEMENT TO:



☒ NEW YORK LIFE INSURANCE COMPANY

☐ NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION
(A Delaware Corporation)

51 Madison Avenue, New York, NY 10010

---

**1.**

**MEASURING**
**LIFE**
**(Proposed**
**Annuitant)**

Name  Teakala Irving

Date of Birth (M/D/Y)  8 / 26 / 80

Sex M☐  F☒   Age  9

Soc. Sec. #  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

(Use Part 8 for additional name in Joint & Survivor cases)

Mail Address (include Zip Code)

Street _____

City _____

State _____ Zip _____

---

**2.**

**OWNER**

Name  Lincoln National
Structured Settlement, Inc.

Tax # 35-1705470

Mail Address (include Zip Code)

Street  1300 South Clinton St.

City  Fort Wayne

State  Indiana  Zip  46801

---

**3.**

**ANNUITY**
**PAYMENTS**

Terms, frequency, and commencement
date of Annuity Payments:
Beginning 8/26/1998,
$5,000 Per month through &
including 7/26/2005, then

(Use Part 8 for more details)
Beginning 8/26/2005
$10,000 per month for life
increasing @ 5% compounded
annually, Payments Guaranteed
through & including 7/26/2035

---

**4.**

**PAYEE(S)**

Annuity payments will be made to:
Name:  Teakala Irving
Soc. Sec. #  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
Address:  c/o William L. Barr, Jr.
Bell, Boyd & Lloyd; 70 West Madison, Ste 3200, Chgo, IL 60602-4207

(Use Part 8 for additional names)
Name: _____
Soc. Sec. # _____
Address: _____

---

**5.**

**BENEFICIARY**

Names and Addresses:
(Please furnish details)
Estate of Teakala Irving

---

988-575  3-88                                    2                                    OVER

POLICY NUMBER FP201124                          CLIENT NUMBER 1A10981        Exit
5

PAYEE:          TEAKALA IRVING

BENEFICIARY:    AS STATED HEREIN AND SUBJECT TO THE PROVISIONS OF THIS POLICY

PLAN:           LIFE ANNUITY – 30 YEARS GUARANTEED

AMOUNT:         ANNUITY PAYMENTS OF $10,000.00 MONTHLY,
                BEGINNING AUGUST 26, 2005.
                PAYABLE WHILE THE ANNUITANT IS LIVING, OR UNTIL AT LEAST
                360 SUCH PAYMENTS (THE GUARANTEED PAYMENTS) HAVE BEEN MADE.

                PAYMENTS TO INCREASE ANNUALLY BY 5 PERCENT
                   BEGINNING AUGUST 26, 2006

                IF ANY GUARANTEED ANNUITY PAYMENTS ARE PAID IN ONE SUM,
                THIS WILL BE CALCULATED BASED ON AN ANNUAL INTEREST RATE
                WHICH IS 1% HIGHER THAN THE RATE USED TO DETERMINE THOSE
                ANNUITY PAYMENTS.

PAGE 2A.02        POLICY DATA        NEW YORK LIFE INSURANCE COMPANY

*Ex H-6*

# **peachtree**
### SETTLEMENT FUNDING

February 15, 2008

## Re:  Potential Purchase of Structured Settlement Payments

Dear Teakala:

Thank you for contacting Peachtree Settlement Funding.  Teakala, I would like to update you on our offer to purchase your future settlement payments.  Currently we are offering you **$1,000,018.96** in exchange for the following:

♦ *3 monthly payments each in the amount of $11,025.00 commencing on May 26, 2008 through and including July 26, 2008.  245 monthly payments each in the amount of $11,576.25 commencing on August 26, 2008 increasing 5.00% every 12 payments through and including December 26, 2028.*

Please call me at 866-581-6153 if you have any questions.

Sincerely,

Terri Collom
Account Executive
**Tel:  866-581-6153**
**Fax: 1-800-600-7161**



**New York Life Insurance Company**
**New York Life Insurance and**
**Annuity Corporation**
(A Delaware Corporation)
51 Madison Avenue, New York, NY 10010

March 7, 2008

Ms. Teakala Irving
4800 S. St. Lawrence
Chicago, IL 60615

Sent via mail and Fax (847-432-1980)

      RE:   *FP201124*

Dear Ms. Irving,

I am pleased to reply to your recent correspondence. In your letter, you requested New York Life Insurance to provide payment information regarding this policy. As per your request, followed are details of this policy and your remaining benefits:

| | |
|---|---|
| Name of Annuity Owner: | Lincoln National Structured Settlement, Inc. |
| Name of Annuity Issuer: | New York Life Insurance Company |
| Payee: | North Star Trust Co, Trustee FBO Teakala Irving |
| Payment Stream(s): | Life Annuity Payments: Currently, monthly payments of $11,025.00 from March 26, 2008 guaranteed through July 26, 2035 and payable thereafter for life. These payments are compounded yearly at 5% every August 26 (please see attached for details of this increase) |

Should you have any questions, do not hesitate to contact me.

Sincerely,

Patrick Kelly
Sr. Service Associate
Individual Annuity Department
51 Madison Avenue, Room 809
New York, NY 10010
(212) 576-6839

*1*

|  |  |  |  |
|---|---|---|---|
|  |  | 2007 | 0 |
| $ 11,576.25 | 3/26 | 2008 | 1 |
| $ 12,155.06 | 3/26 | 2009 | 2 |
| $ 12,762.82 | 3/26 | 2010 | 3 |
| $ 13,400.96 | 3/26 | 2011 | 4 |
| $ 14,071.00 | 3/26 | 2012 | 5 |
| $ 14,774.55 | 3/26 | 2013 | 6 |
| $ 15,513.28 | 3/26 | 2014 | 7 |
| $ 16,288.95 | 3/26 | 2015 | 8 |
| $ 17,103.39 | 3/26 | 2016 | 9 |
| $ 17,958.56 | 3/26 | 2017 | 10 |
| $ 18,856.49 | 3/26 | 2018 | 11 |
| $ 19,799.32 | 3/26 | 2019 | 12 |
| $ 20,789.28 | 3/26 | 2020 | 13 |
| $ 21,828.75 | 3/26 | 2021 | 14 |
| $ 22,920.18 | 3/26 | 2022 | 15 |
| $ 24,066.19 | 3/26 | 2023 | 16 |
| $ 25,269.50 | 3/26 | 2024 | 17 |
| $ 26,532.98 | 3/26 | 2025 | 18 |
| $ 27,859.63 | 3/26 | 2026 | 19 |
| $ 29,252.61 | 3/26 | 2027 | 20 |
| $ 30,715.24 | 3/26 | 2028 | 21 |
| $ 32,251.00 | 3/26 | 2029 | 22 |
| $ 33,863.55 | 3/26 | 2030 | 23 |
| $ 35,556.73 | 3/26 | 2031 | 24 |
| $ 37,334.56 | 3/26 | 2032 | 25 |
| $ 39,201.29 | 3/26 | 2033 | 26 |
| $ 41,161.36 | 3/26 | 2034 | 27 |
| $ 43,219.42 | 3/26 | 2035 | 28 |
| $ 45,380.39 | 3/26 | 2036 | 29 |
| $ 47,649.41 | 3/26 | 2037 | 30 |
| $ 50,031.89 | 3/26 | 2038 | 31 |
| $ 52,533.48 | 3/26 | 2039 | 32 |
| $ 55,160.15 | 3/26 | 2040 | 33 |
| $ 57,918.16 | 3/26 | 2041 | 34 |
| $ 60,814.07 | 3/26 | 2042 | 35 |
| $ 63,854.77 | 3/26 | 2043 | 36 |
| $ 67,047.51 | 3/26 | 2044 | 37 |
| $ 70,399.89 | 3/26 | 2045 | 38 |
| $ 73,919.88 | 3/26 | 2046 | 39 |
| $ 77,615.88 | 3/26 | 2047 | 40 |
| $ 81,496.67 | 3/26 | 2048 | 41 |
| $ 85,571.50 | 3/26 | 2049 | 42 |
| $ 89,850.08 | 3/26 | 2050 | 43 |
| $ 94,342.58 | 3/26 | 2051 | 44 |
| $ 99,059.71 | 3/26 | 2052 | 45 |
| $ 104,012.70 | 3/26 | 2053 | 46 |
| $ 109,213.33 | 3/26 | 2054 | 47 |
| $ 114,674.00 | 3/26 | 2055 | 48 |
| $ 120,407.70 | 3/26 | 2056 | 49 |
| $ 126,428.08 | 3/26 | 2057 | 50 |

2

Exhibit 8

### Description of Annuity Interest

I, **Teakala Irving,** of 4800 St. Lawrence, Chicago, Illinois am the annuitant of a Structured Settlement contract with New York Life Insurance Company.  The terms of the contract are Life income for 29 years guaranteed.  The payments under this annuity will end on June 26, 2035.  I presently receive a monthly payment of $ 10,500.00 which compounds at 5% per annum.  The annuity is described as FP 201 124.  See attached exhibits (3-6) and currently is worth in excess or $ 1,000,000.00.

Sworn to under oath by Teakala Irving
4/02/08
### Assignment of Annuity Interest

I, Teakala Irving, do hereby agree to assign my rights and interests as said annuitant to the contract described above, to the United States Government, in the amount of $ 680,000.00 if Rondell Freeman is held to have violated the terms of his bond by failing to return to court to answer charges now pending against him in 07 CR 843 in the federal court in the Northern District Court of Illinois. Upon the court making such a finding I will execute any and all documents necessary to immediately pay the aforementioned amount to the Government of the United States.  I further agree not to in any way assign or dissipate said cash value of my current annuity below the amount of $ 680,000.00.  Any of my heirs, assigns or successors in interest to any rights in this annuity are hereby prohibited from dissipating said annuity's cash value below said amount of $ 680,000,00 and are hereby bound to this agreement and will also execute any document necessary to transfer said sum of money to the United States Government if Rondell Freeman does not honor his obligation to return to court.

Sworn to under oath by  Teakala Irving
4/02/08
### CONTEMPT OF COURT

I, Teakala Irving, do hereby understand that I agree to be held in contempt of this court if I fail to execute all documents necessary to transfer the aforementioned funds to the United States of America, upon demand, if Rondell Freeman fails to return to court.

Sworn to under oath by Teakala Irving
4/02/08

-*j*-